By the Court.—Curtis, J.
The plaintiffs insist that the use made of the property by the New York and Staten Island Ferry Company, after May 21, was a violation of the terms of the order of that date, and that the North Shore Staten Island Ferry Company and its officers also violated such order in permitting such use. They further insist, that the transfer of the boat “D.E. Martin,” was made at such a time and under such circumstances as to show that it was not a regular business transfer, made for the sole purpose of disposing of all interest in, or connection with, the boat and its future use, but that it was so planned and consummated that, though the nominal title passed, the substantial right of property and control of the boat remained with those who previously had it, thus furnishing them with means for deceiving the court, and with a cover under which to defy its orders, and to continue a violation of law, and of the plaintiff’s rights.
The appellants claim, that their use of the plaintiff’ s wharf at the foot of Whitehall Street was not a violation of the order of May 21, and that the sale of the ferry boat, by the New York and Staten Island Ferry *311 Company, to its president, Pendleton, June 16, was without notice of the decision, and was in good faith and for value, and that his sale to Birdseye on June 19, was also for value, and was made to avoid even the appearance of a violation of the injunction by the New York and Staten Island Perry Company.
The appellants further claim, that after Wm. H. Pendleton became the owner of the boat in his individual capacity he was not restrained by the injunction, and that he had the right to use it as he did after June 16, to run a ferry from New York to Staten Island, and that Birdseye or any other person who succeeded him as owner, succeeded to the same rights.
The claim of the appellants, that the sale of the ferry boat was without knowledge of the decision, and was in good faith, and with no intent that she should be run in violation of the injunction, meets with some difficulties. It is not a conclusive circumstance, but it is a remarkable coincidence, that the sale of the boat to Mr. Pendleton should have been made on June 16, the very day the injunction order was entered, and it is extraordinary that neither the defendants nor Mr. Pendleton had heard or read of this decision, which had been already spread before the public generally by the press, and which in so important a manner affected their business, and which their attorney had read the previous morning.
It is but reasonable to suppose the attorney would have notified his clients at once of this decision, and it is strongly and repeatedly urged in the appellants’ points, that he testifies, that “he did not see or inform Mr. Pendleton” of it until about 3 p.m. of June 16, and after the sale of the boat. The affidavit of the attorney does not sustain this view of it, and while it omits to state whether or not he notified Mr. Pendleton of this decision on the previous day, it uses this language, “ It is true deponent read the opinion of Justice Vaw *312 Vobst, the forenoon of June 15, but deponent did not see Mr. Pendleton until the afternoon of June 16, a,bout 3 p.m. as nearly as deponent recollects. That Wm. H. Pendleton resides at Staten Island; that deponent spoke to Mr. Pendleton about said decision, when he called to see deponent on the afternoon of June 16, for the first time.” If he could have corroborated Mr. Pendleton’s statement by saying that he omitted to notify him previously to this interview he could have so stated, as it is of comparatively little importance when he first “ spoke ” to him about it.
Again there is an additional circumstance not calculated to inspire confidence in the good faith of the sales of the boat. They are made for the apparent consideration of one dollar, but it is claimed by Mr. Pendleton that as a consideration he further assumed an indebtedness of the company amounting to fifty thousand dollars and upwards, incurred by the company in respect to the boat, and that Mr. Birdseye, when he bought, assumed the payment of the same indebtedness, and relieved Mr. Pendleton of his responsibility. It is singular that in transactions of this magnitude, and in the assumption of the payments of debts of third parties, there appears to have been no instruments executed to give them effect and validity, at least none are presented in the papers, nor is the appellants’ statement strengthened by the omission by the other officers of the company and by Mr. Birdseye, to say anything in corroboration. These transfers of the boat, do not seem to have been for an adequate consideration stipulated between the sellers and the purchasers, and made in the ordinary and prudent transaction of business, and when considered in connection with the continued running of the boat for the same ferry purposes, after the sale by the company, and with the other difficulties of the appellants case previously remarked, confidence is not inspired in the good faith *313 of the sale, and the desire to avoid violating the injunction claimed by the appellants.
In the plaintiff’s moving papers it is alleged that Mr. Pendleton, the president of the companies, has publicly declared his intention of evading the injunction and process of this court, by further transfers of the said boat, and that said Pendleton in such connection has made use of the following words : “ If he brings an injunction against me as a private individual, I shall sell out to the first purchaser, and shall continue to fight if the boat has to pass through the hands of all the people in the city. In this way I think we shall keep him very busy in bringing injunctions against us.”
In answer to this, Mr. Pendleton, in his affidavit, denies that he has declared, as is stated in the moving affidavits, his intention, publicly or otherwise, of evading the injunction in this action, or either of them, or which may be commenced, or that he has any such intention.
When the allegation and the denial are placed in juxtaposition, it requires no comment to show that there is a failure to make that clear, full, and unevasive denial of the words, or words to the effect of those charged.
Among the ancient grants from the crown to the plaintiffs, none was more full and complete than that of the ferry franchises, rights, and fees, from Hew York Island to points on the shores round about. Hedged in by constitutional and legislative restrictions, and its possession retained against contestants, who urged all that research, learning and matchless ingenuity could accomplish to get possession of it, this grant yet remains still one of the most valuable assets of the city, and constitutes the only means by which the city collects any compensation from thousands for the protection of whose persons and property she incurs heavy annual expenditures.
*314 At the same time at which this appeal was argued, the appeal from the order continuing the injunction was also argued, and has, by the concurrence of the same judges, been affirmed, thus establishing the right of the city to the ferry franchise.
But the present appeal does not involve that question, but simply whether the appellants have violated the injunction orders of the court in using and interfering with such right. It is apparent that if by pretended sales of the ferry boats to persons who have not been or can not be served with process, and then keeping them running on the ferry routes, the effect of the injunctions can be avoided, that it is simply a mode of unlawfully seizing upon and using the public property. Justice should be slow to give effect to a wrong, and when that wrong is sought to be accomplished by such a coarse of proceedings as is here shown on the appellants part there must be some remedy.
The occupation of the plaintiff’s wharf at the foot of Whitehall Street after May 21, was a violation of the order of that date, and it is impossible, after considering the proofs, to come to any other conclusion than that the sale of the ferry boat made June 16 was made after notice of the decision granting the injunction, and that it was made in bad faith, and for the purpose of evading the injunction of June 16, and of continuing the running of the ferry, and that the further sale of June 19 was merely a part of the same scheme.
These ingenious and plausible devices resorted to by the appellants, to still retain and use the plaintiff’s property notwithstanding the injunction orders of the court, serve only as indications and proofs of their willful intention to violate them. Public property, as well as private, is entitled to the protection of the law, and can not be wantonly invaded and seized, nor can the arm of the law be made powerless, by a reckless *315 disobedience or fraudulent evasions of the orders of the court. If the doctrine of the appellants was to prevail, there would be a speedy end of property.
But the latter take the position that under any circumstances the plaintiffs are not entitled to an attachment against them, because the proceedings are irregular, as interrogatories were, not filed before the final adjudication upon the alleged contempt. In support of this, the case of Pitt v. Davison (37 Barb. 98) is cited, and if it had not been called in question, it would have gone far to establish the appellants’ claim. But when this case reached the court of appeals (reported in 40 N. Y. 235), it was reversed, and the court held that where the proceeding is by order to show cause, as in the present case, no interrogatories need be filed to enable the party to purge himself of the contempt alleged. The party charged has an opportunty to make his defense by affidavits.
The objection that the last injunction order was not served in such a way as would justify the proceedings by attachment is without force, as the papers show that certified copies of it were served upon both the attorney and Mr. Pendleton. Even parties simply hearing that an order for an injunction has been granted, and disregarding it, can be adjudged guilty of contempt (Hall v. Thomas, 3 Edw's. Chy. 236 ; People ex rel. Morrison v. Brown, 4 Paige, 405; Osborne v Tannent, 14 Vesey, 136).
Heither is the objection, that if there has been any breach of the injunction or any contempt, it has been waived, tenable. The proofs fail to show any waiver, and the case cited by the appellants (Anon. 15 Vesey, 174), is not analogous to the present case, and if it was it would not vary the procedure directed by the Code.
There appears to be no just reason why the orders appealed from, imposing fines and imprisonment for the *316 violation of the injunction should not be affirmed with costs.
Monell, Oh. J., concurred.